tice. The strictures are utterly unfounded. The action of the justice was wholly within the line of his duty in eliciting facts, and the counsel's citation of the provision of the Greater New York charter, which forbids a justice of the municipal court to practice as an attorney, and hence to act as counsel for either party on a trial before himself, is neither dignified nor humorous, and justly merits the reprobation of an appellate tribunal.

The court rendered judgment for $196.87, the amount of principal and interest, with costs, demanded in the complaint. No deduction was made for the $25 mentioned in the questioned receipt, but the plaintiff's exhibits show that there was a payment of $25 made on October 25, 1893, for which allowance was made in the prayer of the complaint. The court, on the evidence, was justified in finding that the $25 named in the receipt was the same payment which appeared in the account under the date of October 25, 1893. In any event, there was a conflict of evidence, and we neither propose, nor are we at liberty, to interfere with a judgment rendered on a disputed question of fact. The motion to dismiss should be denied, and the judgment affirmed.

Judgment of municipal court affirmed, with costs. All concur, except JENKS, J., who takes no part.

---

## McGAHEY v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

ACCORD AND SATISFACTION—INJURIES—DEATH—NEXT OF KIN—STIPULATION.

A stipulation to secure a continuance, made by a defendant railroad company in an action for injuries, waiving a defense of accord and satisfaction, and providing that in case of plaintiff's death before trial the action shall not abate, does not give to plaintiff's next of kin, on his death before judgment, the benefit of such judgment, and, in addition thereto, their statutory action, which would exist if no recovery had been enjoyed by decedent in his lifetime, but such stipulation and subsequent recovery operate as an accord and satisfaction, and extinguish subsequent rights of action for the benefit of the next of kin.

Appeal from trial term, Kings county.

Action by Catherine McGahey, administratrix of William McGahey, deceased, against the Nassau Electric Railroad Company, for injuries to plaintiff's decedent. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

John L. Wells, for appellant.
Homer R. Scoville, for respondent.

HIRSCHBERG, J. William McGahey, the plaintiff's intestate, was injured, it is claimed, by a collision between one of the defendant's cars and a wagon in which he was riding on the 31st day of December, 1896. On January 4, 1897, in consideration of a small sum of money, he executed and delivered to the defendant a general release, duly ac-

knowledged, releasing the defendant from all liability by reason of the collision.    Attached to the release, however, is a bill against the company for damages to the wagon only, made out in the sum which is named as the consideration in the release.    He afterwards commenced an action to recover damages for personal injuries alleged to have been sustained by him in the collision, which action was reached for trial in December, 1898, and as a condition of an adjournment applied for by the defendant the defendant was required by the court to give, and did give, a written stipulation, providing, among other things, as follows:

"(2) That in case of the death of said plaintiff before the trial of this action the plaintiff's cause of action shall survive, and not abate, and any or all provision or provisions of the law which are in force in the state of New York at the present time or at the time of the trial of this action to the effect that this action, being an action for damages for personal injuries, does not survive the death of the plaintiff, are hereby expressly waived by the defendant herein; and the defendant herein, the Nassau Electric Railroad Company, hereby expressly stipulates that this action, in the event of the death of the plaintiff herein before its trial, shall survive, and that it shall continue with the same force and effect, and shall be governed on the trial by the same rules of law and evidence, as if the plaintiff were alive at the time of such trial, or as if the action survived by operation of law.   (3) That the plaintiff shall in such an event be allowed to serve a supplemental complaint alleging the death of the plaintiff, and the appointment and qualifications of his personal representatives, and such other facts as may be necessary to revive and continue the action.   (4) That in such an event the defendant herein shall ·be confined in its pleadings to an answer substantially identical with the answer in this action; that is, setting up a general denial and contributory negligence, and not setting up any affirmative defense.   And it is hereby expressly stipulated by the defendant therein that in such an event, viz. the death of the plaintiff herein· before the trial of his action, the settlement and release heretofore mentioned in connection with this action as having been made in January, 1897, or at any other time, by the plaintiff herein, shall not be pleaded or proven upon the trial (or trials) of this action by the defendant herein."

Among the recitals in the stipulation preceding the terms of the stipulation is the following:

"And whereas the plaintiff, on said December 16, 1898, raised serious objections to any further postponement of the trial of this case on the ground, among other things, that it appeared that the plaintiff was likely soon to die, and in the event of his death this action would abate, and in case of the abatement of this action a new action would be necessary, with new pleadings, in which event the said alleged release could be pleaded by the defendant; and the court, Mr. Justice Jesse Johnson, presiding, having decided to postpone the trial of this case, provided the defendant would stipulate with the plaintiff, through his attorneys, that, in case of the death of the plaintiff before the trial of this action, this action should continue in the name of the personal representative of said plaintiff with the same force and effect, and under the same pleadings (except the service of a supplemental complaint setting up said death), and the same rules of law and evidence, as if said plaintiff had lived and were alive at the time of the trial or trials or hearings· on appeal of this action."

Before the trial of his action, viz. on the 5th day of January, 1899, William McGahey died, and the plaintiff was substituted as his administratrix.    The action was thereupon tried, and resulted in a verdict for the plaintiff of $6,000.    The defendant appealed to this court from the judgment, and the judgment was reversed unless the plaintiff

stipulated to reduce the recovery to $3,500. McGahey v. Railroad Co., 42 App. Div. 626, 59 N. Y. Supp. 1109. The plaintiff made the necessary stipulation, and the judgment was duly paid and satisfied. Thereafter the plaintiff commenced this action for the purpose of recovering the pecuniary damages sustained by the next of kin of William McGahey, on the theory that his death was occasioned by the accident. The appeal raises many questions involving the sufficiency of the proof, and especially as to whether the death of McGahey was sufficiently traced to the collision; but a discussion of these questions is unnecessary, inasmuch as we are of the opinion that the first action, and the recovery and payment of the judgment therein, operate to bar the present action. In other words, we regard the effect to be the same as though McGahey had recovered and collected the first judgment in his lifetime. The object and effect of the stipulation was to keep him alive in law for the purpose of the recovery, notwithstanding he was in fact dead; and therefore the recovery is to be regarded as if had in his lifetime,—as, indeed, it was, in contemplation of law, by virtue of the stipulation. That a recovery during the lifetime of the injured party would be a bar to a subsequent action for the benefit of the next of kin was determined by the court of appeals in the case of Littlewood v. Mayor, etc., 89 N. Y. 24, where it was expressly held that when a person who was injured by the wrongful act, neglect, or default of another brings suit, and recovers damages for the injury in his lifetime, in case death subsequently results from the injury his personal representatives cannot maintain an action under the act of 1847 (chapter 450, Laws 1847). The court held that the act was not intended to impose a double liability, but simply to give a right of action where a party, having a good cause of action for a personal injury, was prevented by death resulting from such injury from enforcing his right, or who omitted in his lifetime so to do. Judge Rapallo said (page 27):

"There can be no doubt that the legislature had power to create the double liability contended for, nor would it necessarily involve any inconsistency. The damages of the party injured are different and distinguishable from those which his next of kin sustain by his death, and no double recovery of the same damages would result. But it is equally clear that the legislature might give to the representatives the statutory right of action only as a substitute for the damages which the deceased was prevented by his death from recovering, and the question now is, what was their intention in this respect? The language of the act plainly indicates, I think, that the framers had in view the common-law rule, 'Actio personalis,' etc., and that their main purpose was to deprive the wrongdoer of the immunity from civil liability afforded by that rule. The entire gist of the first section is that the wrongdoer 'shall be liable to an action for damages notwithstanding the death of the person injured, and though the death shall have been caused under such circumstances as amount in law to a felony.' It does not provide that the wrongdoer shall be liable notwithstanding that he shall have satisfied the party injured, or notwithstanding that the latter has recovered judgment against him, or notwithstanding any other defense he might have had at the time of the death, but merely that the death of the party injured shall not free him from liability; showing that this is the point at which the statute is aimed."

After an examination of the authorities in England under Lord Campbell's act and in this state under our act, Judge Rapallo reaches the conclusion, in relation to our statute (page 32), that "the

act has made an important change in the common law in affording
a remedy in cases where the death would have protected the wrong-
doer against any recovery whatever; and in holding it applicable
to such cases only we think that all is accomplished that the legis-
lature intended." In view of this decision, and the reasoning upon
which it is based, it would be profitless to comment upon the nu-
merous cases cited in the respondent's elaborate and exhaustive
brief, determined in states which allow two actions for the tort
committed,—one to recover the damages sustained by the injured
party, and the other to recover the damages sustained by his next
of kin. It is sufficient that in this state but one action is allowed,
and that a recovery for the damages sustained by the injured party,
or payment of such damages, and a release in accord and satisfac-
tion, will bar and prevent a recovery on behalf of the next of kin.
If the statutory right of action given to the representatives of the
injured party is "only as a substitute" for "damages which the de-
ceased was prevented by his death from recovering," the "main
purpose" which the legislature had in view being only to deprive the
wrongdoer of immunity for the wrong which he has occasioned, and
the remedy is "applicable to such cases only" as would otherwise
have "protected the wrongdoer against any recovery whatever," it
necessarily follows that the right of action given by statute does
not exist where the injured party either receives his damages by
voluntary payment or succeeds in recovering and collecting them at
law, and whether this be actually accomplished in his lifetime or by
means of a stipulation which permits it to be done after his death
to the like effect as though he were still alive. Nor is there any
force in the respondent's contention that the legal result of the stip-
ulation is to place the plaintiff in the same position as she would
occupy if the two causes of action were allowed in this state. The
object of the stipulation was to revive and continue the existing
action in case of the death of the then plaintiff before trial, and not
to create a new action, and to impose an additional liability, which
was inconsistent, under the laws of this state, with the maintenance
of the action in which the stipulation was given, and which would
not have existed had the case proceeded to trial at the time the ad-
journment was moved. This not only follows from the presump-
tion that the stipulation was made in conformity with the laws of
this state, rather than with those of other jurisdictions, but from
the precise language of the stipulation itself. It was made be-
cause of and to meet the "serious objections" to the postponement
urged by the plaintiff on the ground that, in the event of his death,
the action would abate, and a "new action would be necessary,
with new pleadings, in which event the said release could be pleaded
by the defendant." The court exacted the stipulation in order to
give to the representatives of the plaintiff, should he die before trial,
the option of continuing the action which he had commenced, and
thereby avoiding the necessity which would otherwise exist of in-
stituting a new action,—that is to say, the statutory action for the
benefit of his next of kin,—to which the release executed by him
could be pleaded, and in which it might prove to be an insuperable

bar. The value of the stipulation is quite apparent without regarding it as making provision for two actions. The plaintiff might die after the adjournment, and before trial, from some other cause than the accident, in which case there could be no action under the statute, while his action would necessarily abate and terminate, and, as a consequence, all recovery would be prevented. The stipulation avoided such a result, and this was its undoubted purpose. On the. plaintiff's death his representatives were at liberty to revive and continue the action which he had commenced; or, if his death chanced to be occasioned by the accident, they could have abandoned that suit, and institutec one under the statute, at their election. They could not do both. On the other hand, it is very evident that the plaintiff's construction of the scope and effect of the stipulation is illogical and unreasonable, and is not to be gathered from either the situation or the language employed. By it she would have her decedent regarded at the time of the first recovery as both alive and dead,—alive for one purpose, and dead for another; alive for his own benefit, and the recovery of the damages which he had sustained by the wrong complained of, and dead for the benefit of his next of kin, and the recovery of the damages which the statute authorizes in their behalf. We give to the stipulation that construction which is in harmony with the law of the state, and consonant to the evident understanding and agreement of the parties. The judgment and order should be reversed.

Judgment reversed, and complaint dismissed, with costs. All concur.